## DAVID H. BOND, Respondent, v. CHICAGO, BURLINGTON & QUINCY RAILWAY COM-PANY, Appellant.

**Kansas City Court of Appeals, December 3, 1906.**

1. **APPELLATE PRACTICE: Conflicting Evidence: Weight of: Jury.** It is beyond the scope of an appellate tribunal's duty to weigh conflicting evidence in jury cases since that function belongs exclusively to the triers of fact; the appellate tribunal may set aside a judgment when there is no substantial evidence to support the verdict since the question as to whether evidence has no probity value is one of law and not of fact; and on the present record there is substantial evidence to support the verdict.

2. **PASSENGER CARRIERS: Duty to Escort of Passenger: Alighting from Moving Train: Jury.** Where the carrier permits a person to assist a passenger to carry baggage into the car though the relation of carrier and passenger does not exist, the carrier must hold the train stationary until such person in the exercise of reasonable care and diligence can alight in safety; and whether the alighting from a slowly moving train is contributory negligence is for the jury.

3. ———: **Alighting From Moving Train: Instruction: Jury.** It is negligence for a person to alight from a moving train after being warned by the trainmen not to do so, but this rule will not permit the substituting of the judgment or caprice of a trainman for the standard fixed by the principles of law, and a court cannot say as a matter of law that alighting from a slowly moving train against such warning is negligence, but the matter should be submitted to the jury; and an instruction should not assume a fact in issue.

4. ———: **Instruction: Due Diligence.** The use in an instruction of the term "due diligence" in defining the measure of duty of a person leaving a car is considered proper since it was used as synonymous with "reasonable diligence," "ordinary care," and "reasonable care" and the term "ordinary care" was defined; and the criticism of the term is held too tenuous to control the disposition of the case.

5. ———: ———: **Evidence: Negligence.** An objection to an instruction with regard to the jerking of a train in starting on the ground that the physical facts overwhelm the evidence to the contrary, is not well taken since courts should not indulge in

arbitrary conclusions respecting physical laws or facts unless they are matters of common knowledge about which reasonable minds do not differ; and it is held further that the facts hypothecated in the instruction constitute negligence and the omission of the term "negligently" is not therefore reversible error.

6. ———: **Alighting from Moving Train: Instruction.** An instruction defeating a recovery on the mere fact of the plaintiffs alighting from a moving train is properly refused.

7. ———: **Second Appeal: Enlarging Issues: Instructions: Negligence.** Where on the second appeal the issue is enlarged by the amended pleadings, the reasons which disposed of the former appeal do not apply, and the instructions relating to contributory negligence in alighting from a moving train are in view of the amended pleadings approved.

Appeal from Grundy Circuit Court.—*Hon. George W. Wannemaker*, Judge.

AFFIRMED.

*O. M. Spencer, N. O. Borders* and *William Henry* for appellant.

(1) One entering a train as an escort for a person taking passage thereon is not deemed a passenger, and is entitled to no time to get off except that afforded in performing the company's duty to its passengers, unless the company has notice of the fact that he enters on the train as a mere escort, and even in that case ordinary care and diligence is the degree of care due such person, and not the high degree of care due to passengers, and to hold the train for him long enough to enable him to so act and leave the train by the use of reasonable expedition is the full measure of the company's duty. Doss v. Railroad, 59 Mo. 27; Yarnell v. Railroad, 113 Mo. 570; Straus v. Railroad, 75 Mo. 185. (2) For a person to get on or off of cars while moving, in disregard of the protest or warning of those in charge thereof, is to assume the risk of the act, and the recklessness or negligence implied will preclude a recovery. Fulks v. Railroad, 111 Mo. 335; Behen v. Transit Co.,

186 Mo. 443; Railroad v. ——, 44 Ill. 460; Blake v. Railroad, 78 Iowa 57; Dodge v. Steamship Co., 148 Mass. 207; Jewell v. Railroad, 54 Wis. 610; Railroad v. Aspell, 23 Pa. St. 147; 5 Am. and Eng. Ency. Law 647. (3) In actions founded upon negligence a causal connection between the negligence and injury must be alleged and proved, and if there are two or more causes from either of which injury might result and from only one of which liability would attach, that one must be shown to have been the cause (Goransson v. Manufacturing Co., 186 Mo. 309) and a plaintiff will not be permitted to recover in a case of negligence, on a theory of fact as to the physical cause of the injury other than the one alleged and supported by his evidence. Behen v. Transit Co., 186 Mo. 430. (4) When on the evidence reasonable minds may differ as to a question of fact, it is for the jury to determine, otherwise the court may declare the law arising upon the fact. Holmes v. Railroad, 190 Mo. 105; Mathis v. Stock Yards Co., 185 Mo. 461. (5) It is a well-settled rule of practice that an appellate court will interfere in case of a verdict of a jury being so clearly against the weight of the evidence that it must have been the result of passion or prejudice. Hipsley v. Railroad, 88 Mo. 348; Cruth v. Richardson, 96 Mo. 186; Spohn v. Railroad, 87 Mo. 74; Cooper v. Hunt, 103 Mo. App. 9. (6) It was improper to give to the jury instructions 1, 2, 3 and 6, as prayed by plaintiff, and also in refusing to the jury instructions numbered 4, 5, 6, 10, 11, 12 and 13, and the one in the nature of a demurrer at the close of the whole evidence, as prayed by defendant.

*Pross T. Cross, W. S. Herndon* and *Harber & Knight* for respondent.

(1) The defendant's requested instruction in the nature of a demurrer was properly overruled. Bond v.

Railroad, 110 Mo. App. 131; Doss v. Railroad, 59 Mo. 27; Yarnell v. Railroad, 113 Mo. 570; Saxton v. Railroad, 98 Mo. App. 494. (2) Jurors are presumed to understand the meaning of ordinary English words, and are to be accredited with ordinary intelligence. Cooper v. Johnson, 81 Mo. 483; Thornberry v. Thompson, 18 Mo. App. 421; Lorimore v. Legg, 23 Mo. App. 645; Fillingham v. Transit Co., 102 Mo. App. 573; Ilegs v. Transit Co., 102 Mo. App. 529. (3) Defendant objects to plaintiff's instruction numbered 2 on the ground that in speaking of the jerking of the train, the word "negligence," or "negligently" is not used. This identical point was before the Supreme Court in the case of Luckel v. Century Building Co., 177 Mo. 608, and that court held in that case that the omission of the word "negligently" from plaintiff's instruction was not error.

JOHNSON, J.—Plaintiff brought this action in the circuit court of Clinton county to recover damages alleged to have been sustained in consequence of the negligent act of defendant in suddenly starting a passenger train while plaintiff was in the act of alighting therefrom. A trial in that court resulted in a judgment for plaintiff, which on appeal we reversed and remanded on account of error in the instructions. [Bond v. Railroad, 110 Mo. App. 131.] After this, the cause was sent to the Grundy Circuit Court on change of venue where plaintiff filed an amended petition. On retrial the judgment was for plaintiff and again defendant appealed.

At the first trial the cause of action pleaded in the petition was restricted in its scope to the negligent act of defendant in suddenly and violently starting a train which had stopped at a station for the purpose of discharging and receiving passengers and thereby throwing plaintiff from the step of one of the coaches while he was in the act of stepping therefrom to the station platform. In the amended petition now before us, this

act of negligence is reasserted and in addition thereto averments are made under which plaintiff predicates a right to recover on the sudden and violent acceleration of the speed of a slowly moving train from which he was attempting to alight. The right of plaintiff thus to amend his petition was not attacked, but defendant answered with a general denial and plea of contributory negligence and went to trial on the issues joined.

The injury occurred about ten o'clock in the morning of October 4, 1902, at defendant's station in Lathrop. Plaintiff, a farmer, sixty-four years of age but robust and vigorous, accompanied his married daughter to the station to assist her departure on the morning train for St. Louis. She had just recovered from a severe illness, was weak and being burdened with heavy hand-baggage required assistance. The train stopped at the station about one minute, so the trainmen testify, and plaintiff and his daughter, the former carrying the baggage, immediately proceeded to the steps at one end of the coach provided for women. A brakeman was stationed at that place and plaintiff says he was informed in effect that plaintiff's daughter was bound for St. Louis and that plaintiff was not intending to become a passenger but was assisting her to the train. The brakeman told plaintiff that he might carry the baggage into the car. Plaintiff did this hurriedly and after depositing the baggage in the car returned without consuming any time in leave-taking. To this point the witnesses for plaintiff agree. They differ concerning the conditions that obtained at the time plaintiff received his fall. Some of them say that the train remained at a dead stop until plaintiff reached the last step and began his step to the station platform when it started with a sudden and very violent jerk. Plaintiff himself testified, "I noticed as I went to step off that the train was moving and then I stepped off and that is the last I remember. . . . Q. Where were you at the time you first discovered the train was

in motion? A. I think I had got down to the bottom step. I could see by looking at the platform that it was moving and it was moving when I got off."

On the part of defendant the witnesses tell a different story. The brakeman, who was standing near the entrance to the car, denies he was informed that plaintiff was not intending to become a passenger and supposing the opposite to be the fact was not expecting him to return from the car. All who were in the car admit that the old gentleman acted in a hurried and excited manner in entering and leaving it and did not remain therein longer than was necessary to deposit the baggage. They say, however, that some one had closed the car door after his entry and that his exit was momentarily delayed by his excited fumbling with the door knob in his effort to open the door and that the train started before he reached the car platform. There he encountered the brakeman who warned him against attempting to alight, but, unheeding, he rushed on and jumped with his face towards the rear of the train when it was running approximately at the rate of five miles per hour. Thus it will be seen there is a radical and irreconcilable conflict between the witnesses of the contending parties and without going into details we find ample support in the facts and circumstances appearing in the record for each account of the injury.

Defendant urges, as it did on the former appeal, that plaintiff should not be permitted to recover under any reasonable view of the facts adduced. The argument advanced deals partly with principles of law, but mainly rests on the assumption that defendant's evidence so preponderates that it completely overwhelms that of plaintiff and requires us to reject the latter entirely and look only to the former for substantial facts. It is beyond the scope of our duty as an appellate tribunal to weigh conflicting evidence in jury cases. That function belongs exclusively to the triers of fact and

their exercise thereof is not subject to review or correction on appeal. It is within our province to set aside a judgment when we find in the record no substantial evidence to support the verdict on which it is based, since the question of whether the evidence adduced in a given case possesses any probative value is one of law and not of fact. But, where we find the evidence to be substantial, our functions cease and we cannot assume the right to weigh such evidence with that opposed to it without invading the province of the triers of fact. In the present case we find the verdict is supported by substantial evidence. Indeed, the weight of the evidence appears to be on the side of the plaintiff's contention, that the brakeman knew plaintiff was not intending to become a passenger but was assisting his daughter; that the brakeman gave plaintiff permission to enter the car for that purpose; that plaintiff acted under this permission with reasonable diligence and that the train was started before he could complete his task and alight in safety and there is substantial evidence tending to show that the train was suddenly started without warning; that the start either was accompanied or immediately followed by a violent jerk and that plaintiff was on the bottom step in the act of stepping to the station platform when the jerk occurred. In such state of proof the action of the learned trial judge in overruling the demurrer to the evidence was proper.

In giving plaintiff permission to carry a passenger's baggage into the car, defendant became charged with the performance of a duty to him notwithstanding the relation of carrier and passenger did not exist between them. That duty required defendant to hold the train stationary until plaintiff in the exercise of reasonable care and diligence could alight therefrom in safety. [Doss v. Railway, 59 Mo. 27; Yarnell v. Railway, 113 Mo. 570; Saxton v. Railway, 98 Mo. App. 494.] Under the facts, the existence of which we must assume, in the considera-

tion of the demurrer to the evidence, defendant started the train in an unreasonably short time and thereby committed a breach of its duty. And under those facts plaintiff's conduct was clearly free from fault. It was his duty to depart from the train and acting to that end with reasonable diligence he cannot be criticized for attempting to step to the station platform either while the train was stationary or while it was moving, as he says, with a barely perceptible motion. And under the hypothesis that the train was moving at an appreciable though slow rate of speed, when plaintiff attempted to alight, the classification of his conduct in making the attempt was a question of fact for the jury and not of law for the court, so that from any standpoint afforded by the evidence of plaintiff the case was for the consideration of the jury. [Bond v. Railroad, supra; Green v. Railroad, — Mo. App. —; Peck v. Transit Co., 178 Mo. 617; Newcomb v. Railroad, 182 Mo. 687; Eikenberry v. Transit Co., 103 Mo. App. 442.]

Defendant complains of the action of the trial court in refusing its request for this instruction: "If, from the evidence, the jury believe that on the occasion of receiving the injury complained of, after the train in question was started, the plaintiff received warning not to get off of the train, from one or more of the defendant's agents or servants, and yet did get off of the train in spite of such warning, then he cannot recover on account of his own negligence contributing to his injury, and your verdict must be for the defendant." In Fulks v. Railway, 111 Mo. 335, and Behen v. Transit Co., 186 Mo. 430, the Supreme Court holds that it is negligence *per se* for a person to attempt to board or alight from a moving train in the face of a warning from a trainman not to do so. Defendant invokes this rule in support of the instruction under consideration and argues that since it adduced substantial evidence tending to show that the train was in motion when plaintiff emerged from the

body of the car and that the brakeman warned him against attempting to alight, the jury should have been directed that his refusal to heed the warning, should they find that one was given, would preclude his right to recover. Should the rule announced by the Supreme Court be inflexibly applied regardless of the circumstances of the particular case, it would result in substituting the judgment, or even caprice, of the trainmen for the standard fixed by the principles of law. In all cases where the question of the degree of care observed by a person is under consideration, the rule by which the act is to be measured is fixed by what the mythical, ordinarily careful and prudent person might have done under the same circumstances, while in the exercise of reasonable care. Such person influenced by what he deemed to be the superior judgment of train operators probably would heed their warning against jumping from a train running at a rate of speed that would greatly enhance the danger of the act, but should we say, as a matter of law, that he would refrain when so warned from alighting from a train that was moving at the rate of half a mile per hour? Certainly not. The observance of reasonable care calls for the exercise of judgment on the part of the actor and this is incompatible with a blind and invariable submission to the dictates of others.

But to sustain the action of the learned trial judge, we are not compelled to go counter even to the broad and comprehensive construction placed by defendant on the rule invoked. The instruction assumes, as an unquestioned fact, that plaintiff attempted to alight from the train after it had started. In view of the controversy among the witnesses over the existence of this fact, the determination thereof by the court in an instruction would have been erroneous.

Another objection made by defendant is directed against the use by plaintiff in his first instruction of the term "due diligence" in defining the measure of

plaintiff's duty in entering and leaving the car. This objection is hypercritical to an extreme. Taking all of the plaintiff's instructions together, we find the terms "due diligence," "reasonable diligence," "ordinary care" and "reasonable care" used synonymously in the treatment of the subject of plaintiff's duty in the respect mentioned and also we find a correct definition of the term "ordinary care." Had there been any conflict in the evidence concerning the manner in which plaintiff discharged this duty, it would be difficult to understand how a reasonable mind after reading all of the plaintiff's instructions could have reached any other conclusion than that which required the jury to hold plaintiff to the employment of reasonable diligence in the doing of the act under consideration and, when we consider that all of the witnesses who saw him enter and leave the car agree that he hastened in the manner of an excited man, the employment by him of reasonable diligence was not a debatable issue and might well have been conceded by the court as a matter of law. The point is too tenuous to be permitted to control the disposition of the case.

The following portion of plaintiff's second instruction is made the subject of criticism: "And if you further find from the evidence that defendant's servants and agents in charge of said train failed to hold said train stationary long enough for plaintiff with due diligence on his part to assist his daughter into said train, but jerked in a violent and unusual and extraordinary manner said train while plaintiff was about to alight therefrom, and that thereby and by reason thereof plaintiff fell, or was thrown, or jerked upon and against the said platform and injured," etc. Defendant is in error in saying there is no substantial evidence tending to show the fact of an extraordinary violent jerk in the movement of the train. Witnesses for plaintiff declare emphatically that such jerk occurred. It is true the wit-

nesses for defendant not only contradict this testimony by a flat denial of its verity, but endeavor to demonstrate the truth of their statement by showing that the manner in which the engine and cars were coupled precluded the possibility of starting the train with a jerk, but we cannot say that physically it was impossible for a violent jerk to occur in the starting of a train thus joined, as we would be compelled to do should we pronounce the evidence of plaintiff to be wholly unworthy of belief. Courts should not indulge in arbitrary conclusions respecting physical laws or facts unless they are matters of common knowledge about which reasonable minds do not differ. Under the evidence the manner of starting the train was an issue for the jury.

Further it is argued that the instruction is defective because it omits to require the finding that the train was *negligently* jerked. The facts hypothecated in the instruction indubitably constitute negligence and, if found to be true, could lead to no other conclusion. In such situation, the omission is not a reversible error. [Luckel v. Building Co., 177 Mo. 608.]

The court refused to give instructions asked by defendant in which the jury was told to find for defendent should they find that plaintiff attempted to alight from the step while the train was in motion. The direction was unqualified, that is, it was not made dependent on the rate of speed at which the train was running at the time nor on the reception by plaintiff of a warning not to alight.

We have noted that the amendment of the petition made after the case was here on the former appeal enlarged the scope of the issues to include the act of negligently increasing the speed of a slowly moving train in a violent manner while plaintiff was in the act of alighting and consequently the reason which prompted the former disposition of the case in this court does not now apply. The submission of that issue to the jury cannot be

condemned on the ground that it is beyond the scope of the specific negligence pleaded nor can the instructions of defendant be sustained on the theory that plaintiff was guilty in law of contributory negligence in attempting to alight from a slowly moving train. The instructions were properly refused.

Other points are made by defendant, but what has been said sufficiently answers them. The case was fairly tried and the judgment is affirmed. All concur.

