### HIMROD v. FT. PITT MIN. & MILL. CO. †

(Circuit Court of Appeals, Eighth Circuit. January 6, 1915.)

#### No. 4094.

1. EASEMENTS ⬦⟾15—RIGHTS PASSING BY IMPLICATION—NECESSITY.

In every private grant there passes by implication that which is reasonably necessary to the enjoyment of the thing granted; nor is it essential to an implied grant that there be an absolute physical necessity for the right demanded.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 42–58; Dec. Dig. ⬦⟾15.]

2. MINES AND MINERALS ⬦⟾55—EASEMENTS—TUNNELS—DEPOSIT OF WASTE—IMPLIED GRANT.

Where defendant by deed acquired the right to bore a tunnel through plaintiff's property and use the tunnel for the operation of defendant's mines, the right to use the surface of plaintiff's property for the deposit of waste and débris brought from the tunnel might be implied from reasonable necessity, to be determined as a question of fact from all the circumstances in the case.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 153–165; Dec. Dig. ⬦⟾55.]

**3. MINES AND MINERALS ☞55—IMPLIED GRANT—REASONABLE NECESSITY— QUESTION FOR JURY.**

Where defendant was granted the right to bore a tunnel through plaintiff's property and use the same for the operation of an adjoining mine, whether there was a reasonable necessity for the use of plaintiff's property for the deposit of waste and débris from the tunnel, so as to raise an implied grant, and the extent and mode of use of the surface to which defendant was entitled, if any, *held* for the jury.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 153–165; Dec. Dig. ☞55.]

**4. ESTOPPEL ☞54—EQUITABLE ESTOPPEL—KNOWLEDGE OF FACTS.**

On an issue as to whether defendant had an implied grant of an easement to use plaintiff's property for dumpage of waste from a mine tunnel, the right to maintain and use which had been deeded to him, evidence, to raise an estoppel, that plaintiff had made no objection to defendant's use of the surface as a dumping ground for many years prior to suit, was properly excluded, in the absence of proof that plaintiff had knowledge of defendant's use of the surface.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 128–135; Dec. Dig. ☞54.]

Youmans, District Judge, dissenting.

In Error to the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Action by the Ft. Pitt Mining & Milling Company against Fred E. Himrod. Judgment for plaintiff, and defendant brings error. Reversed, and new trial granted.

C. C. Parsons, Jr., of Salt Lake City, Utah, and F. L. Collom, of Idaho Springs, Colo. (Charles C. Parsons, Sr., of Salt Lake City, Utah, on the brief), for plaintiff in error.

Caldwell Martin, of Denver, Colo. (Charles W. Waterman, of Denver, Colo., on the brief), for defendant in error.

Before CARLAND, Circuit Judge, and T. C. MUNGER and YOUMANS, District Judges.

T. C. MUNGER, District Judge. This action for the recovery of damages occasioned by the deposit of rock and débris by plaintiff in error upon the property of the defendant in error, was formerly before this court, and the opinion of the court is published in Himrod v. Ft. Pitt Mining & Milling Co., 202 Fed. 724, 121 C. C. A. 186, to which reference may be had for a statement of the essential facts.

Upon the second trial, the deed and mining lease referred to in the former opinion were received in evidence. The lease provided for certain mining and tunnel work to be done by plaintiff in error and another, in a portion of the Oneida lode claim, for two years after August 15, 1894. The deed, which was executed to the plaintiff in error and his associate and their assigns at the same time as the lease, recited the ownership of distinct lode claims by the parties, the desire of the grantees to extend the No. 2 tunnel or level of the Oneida mine into their own claims "for the purpose of working and draining said Lamartine and other mines through said level, tunnel, or adit so run or to be run," and then granted to them a perpetual right of way

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

through the Oneida level No. 2 for the purpose of driving the tunnel or level into the Lamartine or other mines owned by them. It also granted a perpetual right of way through the tunnel, when constructed, with the right to maintain and operate it for the purpose of working and mining all lodes and mines beyond the boundaries of the Oneida claim, that the grantees might own or acquire, and to place and maintain in the tunnel, tram tracks, air, water, and steam pipes, electric light and power wires, telephone wires, electric lamps, and telephones. The right was also given to conduct the water through the tunnel from the mines of the grantees and to operate cars and trains in the tunnel "together with all and singular such other and further rights in and to said tunnel, adit, or level, or the right of way hereby granted, as will enable the [grantees] to work the mines they now own or may hereafter acquire by lease, deed, or location, through the said tunnel, adit, or level in such manner as they shall deem expedient or proper." The grantors reserved in the deed the right to work the Oneida and other mines through the tunnel, to move over the railway tracks therein its timbers, waste, and ore, and to cut openings in the bottom of the tunnel to furnish air to other workings. The plaintiff in error succeeded to the rights of his associate grantee and cut the tunnel through the Oneida claim to the mines owned by him, depositing at the mouth of the tunnel, which·opened on the surface of the Oneida claim, rock and waste from the Oneida and from his own claims.

At the close of the evidence the court instructed the jury that the plaintiff in error had no right to deposit, upon the surface of the Oneida claim, rock and waste brought from the tunnel or mines beyond the Oneida claim, and the jury returned a verdict against the plaintiff in error. The instructions of the court, denying the plaintiff in error the right of dumpage on the surface of the Oneida claim, are claimed to be erroneous, because the grant of that right was implied in the deed, as it was reasonably essential to carrying on his mining operations through the tunnel, and because the grantor had deposited the waste from the Oneida mine at the mouth of the tunnel before the making of the deed, and because the plaintiff in error for many years after the execution of the deed had used that place for the deposit of waste from his mines without objection on the part of the grantor.

[1] In every private grant there passes by implication that which is reasonably necessary to the enjoyment of the thing granted. Washburn on Easements (4th Ed.) pp. 49–54. Hence a grant of the minerals under the surface of the land implies the right to mine them by the sinking of shafts or boring of tunnels and the removal of them through such openings. Shep. Touch. 89–100; Cardigan v. Armitage, 2 Barn. & Cress. 197; Rowboltam v. Wilson, 8 H. L. Cases, 38; Ingle v. Bottoms, 160 Ind. 73, 66 N. E. 160; Ewing v. Sandoval C. & M. Co., 110 Ill. 290; Marvin v. Brewster Iron Mining Co., 55 N. Y. 538, 14 Am. Rep. 322; Baker v. Pittsburg C. & W. R. Co., 219 Pa. 398, 68 Atl. 1014; Hooper v. Dora Coal Min. Co., 95 Ala. 235, 10 South. 652; 2 Lindley on Mines, § 813.

Because a mine may not be worked practically without other facilities, the grant of the minerals implies the right to construct and operate roads, tram and railway tracks upon the surface for the use of the mine (Dand v. Kingscote, 6 M. & W. 174; Marvin v. Brewster Iron Min. Co., supra; Porter v. Mack Mfg. Co., 65 W. Va. 636, 64 S. E. 853; Consolidated Coal Co. v. Savitz, 57 Ill. App. 659), to build air shafts, erect machinery, store water for the use of the engines, and in general to do that which is reasonably necessary for the use of the thing granted (Dand v. Kingscote, supra; Fowler v. Delaplain, 79 Ohio St. 279, 87 N. E. 260, 21 L. R. A. (N. S.) 100; Williams v. Gibson, 84 Ala. 228, 4 South. 350, 5 Am. St. Rep. 368; Wardell v. Watson, 93 Mo. 107, 5 S. W. 605; Turner v. Reynolds, 23 Pa. 199; Gordon v. Million, 248 Mo. 155, 154 S. W. 99; Gordon v. Park, 219 Mo. 600, 117 S. W. 1163; Armstrong v. Maryland Coal Co., 67 W. Va. 589, 69 S. E. 195; 2 Barr. & Ad. Mines and Mining, 576). That which is convenient does not pass by such grant, unless it is also reasonably necessary. Cardigan v. Armitage, supra; Midgely v. Richardson, 14 M. & W. 595; Marvin v. Brewster Iron Min. Co., supra; Ingle v. Bottoms, supra; Williams v. Gibson, supra; Anderson v. Cowan, 125 Iowa, 259, 101 N. W. 92, 68 L. R. A. 641, 106 Am. St. Rep. 303; Humphreys v. McKissock, 140 U. S. 304–313, 11 Sup. Ct. 779, 35 L. Ed. 473; Webber v. Vogel, 159 Pa. 235, 28 Atl. 226; Hooper v. Dora Coal Min. Co., supra.

It is not requisite to an implied grant that there is an absolute physical necessity for the right demanded. It is said in Pettingill v. Porter, 8 Allen (Mass.) 1, 85 Am. Dec. 671, there may be a way by necessity when another cannot be got or made without unreasonable labor and expense, and that in determining the question the jury may consider the comparative value of the land and the probable cost of such ways, and that—

"the word 'necessary' cannot * * * be limited to absolute physical necessity. If it were so, the way in question would not pass with the land, if another way could be made by any amount of labor and expense, or by any possibility. If, for example, the property conveyed were worth but $1,000, it would follow from this construction that the plaintiff's intestate would not have the right of way over the triangular piece as appurtenant to the land, provided he could have made another way at the expense of $100,000. If the word 'necessary' is to have a more liberal and reasonable interpretation than this, the one adopted by the judge must be regarded as correct. Its effect was to require proof that the way over this triangular piece was reasonably necessary to the enjoyment of the dwelling house granted."

[2] There are obvious degrees of necessity for the use of the surface in the conduct of subterranean mining operations, from the absolute necessity of sinking shafts or making other entrances to the minerals, to the practical necessities of business operations, such as the placing of steam engines and machinery at the mouth of the entrances, of constructing ponds of water to supply the engines, of laying and operating rail or tram ways to bring in supplies and to carry out the ore, of storage of minerals on the surface pending sales, of assembling houses, stores, and shops for the use of the miners; but such uses have been declared in the cases cited to be implied in the grants, if

found to be necessary by the triers of fact. It is equally obvious that a grant of the right to bore a tunnel or to sink a shaft may imply the right, as a reasonable necessity, to use the surface for the deposit of waste and débris brought from the tunnel or shaft, such necessity to be determined as a question of fact from the circumstances of the case. Scheel v. Alhambra Min. Co. (C. C.) 79 Fed. 821; Schwab v. Smuggler-Union Min. Co., 174 Fed. 305, 98 C. C. A. 160; Webber v. Vogel, supra; Wardell v. Watson, supra; Marvin v. Brewster Iron Min. Co., supra.

In the case of Schwab v. Smuggler-Union Min. Co., supra, this court held that the grant of the right to deposit tailings and débris in a river, whence they would be carried through the flumes, sluices, and reservoirs of the grantor, gave the implied right to deposit the tailings and débris on grantor's lands and claims, as they were precipitated at the ends of the flumes and sluices. In the present case the grant allowed plaintiff in error (1) to conduct drainage water from his mines through the Oneida tunnel, and (2) to use the tunnel as a carriageway in working his mines in such manner as he deemed proper. It is apparent that if the plaintiff in error had deposited débris at the mouth of the mine as a result of the discharge of drainage water, the principle announced in the Schwab Case would apply. No reason is perceived why it may not be as necessary to deposit the débris there, if carried by cars through the tunnel, as if carried as a deposit in water and through drainage ditches. The nature of the surface where the right of deposit is claimed, its adaptability and value for other uses, the accessibility of other places where dumping could be made, and the reasonable cost of acquiring and using such a place of deposit, are among the considerations that may enter into the question of an implied grant to make such a deposit in mining or tunnel operations as a reasonable necessity.

[3] In this case, the tunnel's mouth was located at an elevation of about 10,000 feet above the sea level, and upon a steep mountain slope, not adapted to many uses, and the owner of the surface had long used the surface as a place of deposit for similar refuse brought from his own mines and from his portion of the tunnel. The evidence was such that the question of the reasonable necessity of the right, the extent and the mode of use of the surface by the plaintiff in error in order to enjoy the grant made to him by the deed, should have been left to the jury.

[4] Complaint is made of the exclusion of evidence whereby the plaintiff in error sought to show that the defendant in error had made no objection to his use of the surface as a dumping ground for many years before this suit was brought, and also of the court's action in refusing to give tendered instructions on the issues of estoppel, and on the construction to be placed upon the deed because of this conduct of the parties. It is not claimed that the defendant in error had knowledge of this use of the surface of the Oneida claims, nor were facts shown that imposed upon it the duty to know of such use, and there was no error in the court's ruling thus challenged. Bank v. Kennedy, 17 Wall. 19, 21 L. Ed. 554; Farmers' & Merchants' Bank v. Farwell,

58 Fed. 633, 7 C. C. A. 391; Anthony v. Campbell, 112 Fed. 212, 50 C. C. A. 195.

A number of other errors are alleged, but a careful examination of them discloses no error of which plaintiff in error can complain; but, for the reasons already indicated, the judgment must be reversed, and a new trial granted.

YOUMANS, District Judge. I dissent from the opinion of the majority of the court, for the reason that in my judgment the reversal is based upon a ground differing from the theory on which the case was tried in the court below. In the lower court the defendant in error based its defense on the theory that its right to dump waste on the Oneida claim appears on the face of the deed. It asked an instruction to that effect. It made no request for an instruction submitting to the jury the question whether the privilege to so dump waste was reasonably necessary to the enjoyment of the right granted by the deed. Its contention below, and in this court also, is that its right appears on the face of the deed, and that it is to be determined by the court as a matter of law.