(No. 3622—

ROBERT TROLIN AND NAOMI ELIZABETH TROLIN, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 12, 1943.*

DAVID M. JACOBSON, for claimants.

GEORGE F. BARRETT, Attorney General; ROBERT V. OSTROM, Assistant Attorney General, for respondent.

CHIEF JUSTICE DAMRON delivered the opinion of the court:

The complaint in this case was filed by Robert Trolin on August 16, 1941. By leave of court an amended complaint was filed on February 24, 1942, joining Naomi Elizabeth Trolin as additional party claimant.

The record consists of the original complaint, copy of report of the Department of Public Works and Buildings, amendment to the complaint, transcript of evidence on behalf of claimant and respondent. Respondent's motion to dismiss having heretofore been denied by the court.

The record discloses that prior to December, 1939, claimants were in possession of land and buildings located on Green Bay Road, Route No. 2, Waukegan, Illinois, pursuant to a real estate purchase contract executed by Edward C. Ottens and Francis Ottens, his wife, the owners of said land. That claimants had constructed a garage type building on said land 50' x 50'. The front of said building had a gas station thereon, which said station was covered with a wooden

canopy attached to and made a part of said building; the said canopy was 20' x 50' in size. There was also one shed type building on said land.

The record of the Department of Public Works and Buildings (Division of Highways) discloses that on or about January 15, 1940, Joseph Miller, District Field Maintenance Engineer of the Division of Highways in behalf of the State of Illinois entered into a verbal contract or lease with the claimants for said premises for the sole purpose of storing machinery, plows, asphalt, oil and other kindred products which said department uses. The agreed rental for said premises was $50.00 per month and to run month to month. It was further understood and agreed that the claimants could store certain of their personal property consisting of machinery, equipment, stock of goods and other belongings.

The respondent took possession of said premises in January, 1940, and continued in possession until April 14, 1941. Rent by way of State vouchers was issued and delivered to the claimants each month from January, 1940, until April, 1941, and machinery and other property belonging to the respondent were at once stored and kept in said building each day thereafter.

On April 14, 1941, at about 9:00 o'clock A. M., six employees of the Division of Highways mixed bituminous materials inside the said garage building. Two barrels of S.C.2 oil were heated on specially designed racks with gasoline torches. A barrel of fluxing oil was placed on a heating rack. This oil was heated for about five minutes when it exploded resulting in the complete destruction by fire of the building of claimants and its contents including the personal property of claimants stored therein.

The respondent filed a motion to dismiss and as ground therefor said:

1. Claimant's claim is predicated on the alleged liability of respondent while engaged in governmental function because of negligence and wrongful acts of its officers, agents or employees.

2. The claimant seeks an award by virtue of an oral agreement and there can be no recovery by virtue of the statutes of the State of Illinois.

We found therefore that under this motion we had first to determine if the Department of Public Works and Buildings through its Division of Highways had authority to enter into a verbal contract or lease as the law existed on or about January 15, 1940.

It is not denied that the premises were rented and used by respondent for the specific purpose of the storage of respondent's equipment and that rent was paid by respondent to claimants for this service.

In *Large & Co.* vs. *State*, 9 C. C. R., page 480, this court had before it a question very similar to the one at bar. There claimant was the owner of a three story and basement building of brick and concrete construction located in Taylorville, Illinois. Part of the building and basement was occupied by officers and members of the Illinois National Guard who were then on duty in Christian County in connection with disorders in the Midland Coal Fields.

There was no written lease between the owner and the respondent, but the occupancy of said premises by the military authorities was pursuant to a verbal agreement between the owner and the officers of the Illinois National Guard in charge of such troops.

The building was heated by a sectional steam boiler and in order that there might be uniform heat at all times for the men who were quartered in the building the National Guard assumed the duty of firing the furnace and in so doing an explosion occurred damaging the furnace and boiler at a cost and expense of $1,014.37, for repairs.

Claim was filed in this court to recover that amount. It is true that the Attorney General in that case did not question the authority of the National Guard to enter into a verbal lease for these premises. But such authority, if any was granted by Section 63 of the Military and Naval Code of this State which provides as follows:

"The Quartermaster's Department is charged with furnishing all means of transportation, clothing, tentage, fuel, stoves, and other means of heating; . . . and in general, all necessary supplies and services not specified for some other staff Department."

The duties and powers of the Department of Public Works and Buildings, Division of Highways, are defined by statute. Chapter 121, Section 296, provides as follows:

"The Department of Public Works and Buildings, in addition to and not in limitation of its general powers, shall have power:
1. . . . to enter into contract covering all matters and things incident to the . . . repair, reconstruction, improvement and maintenance of state highways."

A statute itself affords the best means of its exposition, and if the legislative intent can be ascertained from its pro-

visions such intent will prevail without resorting to other aids for construction. (2 Lewis Sutherland on Stat. Const. (2 d.) secs. 348, 366; *Burke* vs. *Industrial Comm.,* supra; *Schaellkapf* vs. *De Vry,* supra; *People* vs. *West Side Trust and Savings Bank,* 362 Ill. 607; *Coon* vs. *Doss,* 361 id. 515; *People* vs. *Oregon State Savings Bank,* 357 id. 545.)

Had the Legislature intended to restrict the department's powers and compel it, before taking any actions, to enter into written agreements, appropriate language to express its purpose would undoubtedly have been incorporated into the Act.

In the absence of an express limitation in the statute it must be presumed that the Legislature intended that the Department of Public Works and Buildings should have power to rent buildings to keep equipment sheltered so that it could be used to repair, reconstruct, improve and maintain our State highways, as was done in this case, and in considering respondent's motion to dismiss we hold the department was acting within the scope of its authority in the instant case when it rented claimants' property for that purpose. Respondent's motion therefore was denied.

Approximate cause of the fire was not the storage of the property belonging to the respondent which was the object for which the respondent rented the premises, but the heating of inflammable substances in said building and the explosion resulting therefrom. The respondent could, and should have foreseen that this was a dangerous undertaking and proper precaution should have been taken.

In the absence of an express agreement at common law there is an implied obligation to surrender the premises in the same condition at the termination of tenancy as when received, ordinary wear and tear excepted. *U. S.* vs. *Bostwick,* 94 U. S. 53 (24 Law Ed. 65); *Walker* vs. *Tucker,* 70 Ill. 527; *Consolidated Coal Co.* vs. *Cavitz,* 57 Ill. App. 659; 35 Corpus Juris Section 555.

This implied obligation is part of the contract itself, as much so as if incorporated into it by express language; and it results from the relation of landlord and tenant between the parties which a contract creates. 16 R. C. L. p. 1085, Section 603.

The evidence shows that the premises could not be surrendered in the same condition as when originally received.

The respondent breached an implied contract and is liable for such breach.

Edward C. Ottens and Francis Ottens, his wife, had or claimed to have had an interest in this real estate and its improvements on the date said improvements were destroyed by fire.

The record discloses that on the 15th day of April, 1941, they assigned all rights, title and interest to the claimants for their sole use and benefit.

Under the allegations of the pleadings, the evidence in the record, and the law as above set forth, claimants are entitled to an award.

The evidence in regard to the fair, cash market value of the destroyed building is somewhat conflicting. From all the evidence before us including the rental derived from the building, we are of the opinion that the value of the building destroyed was the sum of $3,000.00. The value of the fixtures and personalty destroyed was $1,663.67.

Award is therefore entered in favor of claimants Robert Trolin and Naomi Elizabeth Trolin for the complete destruction of the building and personal property stored therein in the sum of $4,663.67, the amount demanded in said amended complaint.